STUART L. CARROLL, ESQ.  (STATE BAR #163980)
LAW OFFICES OF STUART L. CARROLL
WESTWOOD PROFESSIONAL BUILDING
1033 GAYLEY AVE., SUITE 107
LOS ANGELES, CA 90024
TELEPHONE:      (310) 443-0600
FACSIMILE:      (310) 443-0661
EMAIL:          carrollaw@aol.com

Attorney for Defendant / Counterclaim Plaintiff
Servue Solutions, Inc., and Defendants Hamid Kohan, aka
Hamid Kohanfars and Benjamin Javaherian

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NULINX INTERNATIONAL, INC., a California Corporation<br><br>Plaintiff,<br><br>vs.<br><br>SERVUE SOLUTIONS, INC., aka/dba SERVUE INC., a California corporation, Hamid Kohan, aka Hamid Kohanfars, an individual, Benjamin Javaherian, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: CV-08-06076 CBM (RCx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S FIRST AND SECOND CLAIMS FOR RELIEF (COPYRIGHT INFRINGEMENT) AND DEFENDANTS' FIRST COUNTERCLAIM (COPYRIGHT INVALIDTY); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:      October 5, 2009<br>TIME:      10:00 A.M.<br>CRTRM:   2<br>JUDGE:   Hon. Consuelo B. Marshall<br><br>[Statement of Uncontroverted Facts and Conclusions of Law, Declarations of Stuart Carroll, Hamid Kohan, Tyson Murphy, David Rismann filed concurrently herewith] |

SERVUE SOLUTIONS, INC., a
California corporation;

          Counterclaim Plaintiff,

   v.

NULINX INTERNATIONAL, a
California Corporation, and Hamid
Kelishadi, an individual,

          Counterclaim Defendants.

PLEASE TAKE NOTICE that on October 5, 2009, or as soon thereafter as counsel may be heard before the Honorable Consuelo B. Marshall, located at 312 N. Spring Street, Los Angeles CA, Defendant / Counterclaim Plaintiff Servue Solutions, Inc. ("Servue"), and Defendants Hamid Kohan ("Kohan") and Benjamin Javaherian ("Javaherian") (all collectively, "Defendants") will move, and hereby do move the court for an order granting partial summary judgment as against Plaintiff's First and Second Claims (Copyright Infringement and Inducement or Contributory Copyright Infringement), as well as on Servue's Declaratory Relief Counterclaim for Invalidity of Plaintiff's Copyright registration.

This Motion is filed following the close of discovery based on this notice of motion, the following memorandum of points and authorities, and the declarations of Stuart L. Carroll, Hamid Kohan, Tyson Murphy and David Rismann filed concurrently herewith as well as the exhibits thereto, all pleadings, deposition transcripts and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.  The Motion is made pursuant to *Federal Rule of Civil Procedure* ["FRCP"] 56 as there is no genuine issue as to any material fact and the moving parties are entitled to judgment as a matter of law. The bases for the Motion are:

1) Plaintiff Nulinx International, Inc. ("Nulinx") alleged infringement of a registration to a work first published on January 1, 2002.  To obtain the registration,

Nulinx submitted deposit copies to the U.S. Copyright Office that were actually created as much as six years later that differ materially from the work for which Nulinx sought, and by misrepresentation obtained, the registration.  Nulinx has admitted it does not have the version of the software created as of January 1, 2002, and it did not have it when it filed the registration in 2008.  There is no copy of the January 1, 2002 software or screen shots derived from the software to define the scope of the January 1, 2002 registration, or infringement thereof, and the registration is invalid.

2) Contrary to Nulinx's allegations in its Complaint and in its application for copyright registration, third-party software developer Infostreet, Inc. actually authored the software created in 2001 and published as of January 1, 2002, for which Nulinx sought copyright registration.  Yet, there was no written assignment from Infostreet to Nulinx of the copyright that predates the filing of the Complaint or even the application for copyright registration. Nulinx did not own the copyright to the subject work and therefore it could not and cannot establish proper jurisdiction for bringing an action under the Copyright Act 17 U.S.C. § 101.[1]

3) Nulinx's copyright causes of action were premised on the current *unregistered* version of the COPA program and current COPA screenshots as compared to screenshots from Servue's software program.  This Court does not have subject matter jurisdiction over an infringement theory based on an unregistered work.  *Well-Made Toy Mfg. Corp. v. Goffa Intern, Corp.*, 354 F.3d 112, 115 (2nd Cir. 2003). Even in the absence of jurisdictional and registration issues, Servue's allegedly infringing work is simply not sufficiently similar to even the current *unregistered derivative work* to support any claim of copyright infringement, let alone inducing or contributory infringement.

///

///

///

///

---

[1] Jurisdiction to adjudicate the lack of proper ownership and registration is provided by the declaratory relief Counterclaim.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on April 10, 2009 as reflected in the email attached as Exh. 1 to the declaration of Stuart Carroll ("Carroll Decl.") submitted herewith.

Respectfully submitted,

LAW OFFICES OF STUART L. CARROLL

Dated:  September 13, 2009

By:   /Stuart L. Carroll/

Stuart L. Carroll

Attorneys for Defendant / Counterclaim Plaintiff Servue Solutions, Inc., and for Defendants Hamid Kohan and Benjamin Javaherian

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT _____ 1

II.   FACTUAL BACKGROUND _____ 4

    A.    COPA Software Development _____ 4

    B.    Form TX seeking Copyright Registration for COPA _____ 7

    C.    Nulinx' Deposits with the U.S. Copyright Office _____ 8

        1.    Source Code Deposit _____ 8

        2.    Screenshot Deposit _____ 9

    E.    LACOE Request for Proposal _____ 10

III.  ARGUMENT _____ 11

    A.    The Standard for Summary Judgment _____ 11

    B.    Plaintiff cannot meet its burden under its Copyright
        Infringement Claims to demonstrate *ownership* of a
        copyrightable work alleged to have been infringed. _____ 12

    C.    Plaintiff cannot meet its burden under its Copyright
        Infringement Claims to demonstrate *valid registration*,
        in accordance with the Copyright Act, of its copyright
        in the work alleged to have been infringed. _____ 15

    D.    Plaintiff cannot meet its burden under its Copyright
        Infringement Claims to demonstrate sufficient *similarities*
        between the Source Code Deposit and the Servue Source Code. ____ 19

    E.    Plaintiff cannot meet its burden under its Copyright
        Infringement Claims to demonstrate sufficient *similarities*
        between the Screenshot Deposit and the Servue Screenshots. _____ 17

IV.   CONCLUSION _____ 25

NULINX V SERVUE, ET AL.
**CV08-06076 CBM**

**DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT
(COPYRIGHT CLAIMS)**

# TABLE OF AUTHORITIES

Federal Cases

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*
    944 F.2d 971 (2nd Cir. 1991)_____13

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)_____11

*Apple v. Microsoft*
    821 F.Supp. 616, (N.D. Cal. 1993) *aff'd* 35 F.3d 1435 (9th Cir. 1994)_____24

*Apple v. Microsoft*
    35 F.3d 1435 (9th Cir. 1994)_____23,24

*Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc*
    29 F.3d 1529 (11th Cir. 1994) ._____10

*Atari, Inc. v. North American Philips Consumer Electronics Corp.*
    672 F.2d 607 (7th Cir. 1982)_____23

*Barnes v. Arden Mayfair*
    759 F.2d 676 (9th Cir. 1985)_____25

*Berkic v. Chricton*
    761 F.2d 1289 (9th Cir. 1985)_____25

*Brown Bag Software v. Symantec Corp.*
    960 F.2d 1465 (9th Cir. 1992)_____25

*Celotex Corp. v. Catrett*
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)_____11,12

*Coles v. Wonder*
    283 F.3d 798 (6th Cir.2002)_____17,18

*Community for Creative Non-Violence v. Reid*
    490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)_____12

-ii-

*Data East USA, Inc. v. Epyx, Inc.*

862 F.2d 204, 207-08 (9th Cir. 1988)_____18

*Delacroix v. Lublin Graphics, Inc.*

993 F. Supp. 74 (D. Conn. 1997)_____14

*Delorme v. United States*

354 F.3d 810, (8th Cir. 2004)_____13

*Dream Games of Arizona, Inc. v. Pc Onsite*

561 F.3d 983 (9th Cir. 2009)_____23

*Eden Toys, Inc. v. Florelee Undergarment Co.*

697 F.2d 27 (2nd Cir. 1982)_____13

*Fantasy, Inc. v. Fogerty*

94 F.3d 553, 558 (9th Cir. 1996)_____3

*Fairbank v. Wunderman Cato Johnson*

212 F.3d 528 (9th Cir. 2000)_____11

*Feist Publications, Inc. v. Rural Telephone Service Company, Inc.*

499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)_____23

*Fogerty v. Fantasy, Inc.*,

510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)_____3

*FW/PBS, Inc. v. City of Dallas*

493 U.S. 215, 110 S.Ct. 596, 107 L.Ed. 2d 603 (1990)_____13

*Gallup v. Kenexa Corp.*

2004 WL 2521183 (E.D.Pa.)_____18

*Geoscan, Inc. v. Geotrace Techs., Inc*

226 F.3d 387 (5th Cir.2000)_____17

*Harper & Row Publishers, Inc. v. Nation Enters*

471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)_____23

-iii-

1    *Herbert Rosenthal Jewelry Corp. v. Kalpakian*

2       446 F.2d 738 (9th Cir. 1971)_____23

3    *H.R. Techs., Inc. v. Astechnologies, Inc.*

4       275 F.3d 1378, 1386 (Fed.Cir.2002)_____15

5    *Idema v. Dreamworks, Inc.*

6       162 F.Supp. 2d 1129 (C.D. Cal. 2001)_____11

7    *Johnson Controls v. Phoenix Control*

8       886 F.2d 1173 (9th Cir. 1989) _____23

9    *Kling v. Hallmark Cards*

10      225 F.3d 1030 (9th Cir. 2000)_____13

11    *Kodadek v. MTV Networks, Inc.*

12      152 F.3d 1209 (9th Cir. 1998)_____1,15,16,17,18,19

13    *Lieb v. Topstone Indus.*

14      788 F.2d 151, 156 (3d Cir.1986)_____3

15    *Litchfield v. Speilberg*

16      736 F.2d 1352 (9th Cir. 1984)_____25

17    *Lujan v. Defenders of Wildlife*

18      504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992)_____13,14, 23

19    *MiTek v. Arce*

20      89 F.3d 1548 (11th Cir. 1996)_____23

21    *Motta v. Samuel Weiser, Inc.*

22      768 F.2d 481 (1st Cir. 1985)_____14

23    *Newman-Green, Inc. v. Alfonzo-Larrain*

24      490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed. 2d 893 (1989)_____14

25    *Rachel v. Banana Republic, Inc.*

26      831 F.2d 1503 (9th Cir. 1987)_____24

27

28

-iv-

*Ruiz v. Gap, Inc.*

    540 F.Supp.2d 1121 (N.D. Cal. 2008)_____23

*See v. Durang*

    711 F.2d 141 (9th Cir. 1983)_____25

*Seiler v. Lucasfilm, LTD.*

    808 F.2d 1316 (9th Cir.1986)_____15,17,18,19

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*

    562 F.2d 1157 (9th Cir. 1977)_____25

*Silvers v. Sony Pictures Entertainment, Inc.*

    402 F.3d 881 (9th Cir. 2005)_____1,13,12

*Smith v. Jackson*

    84 F.3d 1213 (9th Cir. 1996)_____13

*Tavory v. Ntp, Inc.*

    495 F. Supp. 2d 531 (E.D. Va. 2007)

    *Cert. Denied Tavory v. Ntp, Inc.*, No. 08-951 (U.S. 6/29/2009)_____18

*Three Boys Music Corp. v. Bolton*

    212 F.3d 477 (9th Cir. 2000)_____13,18

*Topolos v. Caldeway*

    698 F.2d 991 (9th Cir. 1983)_____13

*U.S. v. Hamilton*

    583 F.2d 448 (9th Cir. 1978)_____23

*Walter Kidde v. Universal Security Instruments, Inc.*

    479 F.3d 1330 (Fed. Cir. 2007)_____15

*Warner Bros. Inc. v. ABC, Inc.*

    654 F.2d 204 (2nd Cir. 1981)_____19,24

*Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.*

NULINX V SERVUE, ET AL.
**CV08-06076 CBM**

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (COPYRIGHT CLAIMS)**

354 F.3d 112 (2nd Cir. 2003)_____20

<u>State Cases</u>

*Rapaport and Benedict, P.C. v. City of Stamford*

     39 Conn. App. 492, 664 A.2d 1193 (1995)_____14

<u>Federal Statutes</u>

17 U.S.C. § 101_____12,11

17 U.S.C. § 102_____21

17 U.S.C. § 102 (a)_____12,22

17 U.S.C. §102(b)_____18

17 U.S.C. § 103_____21

17 U.S.C. § 106_____22

17 U.S.C. § 201(a)_____12

17 U.S.C. § 204(a)_____10

17 U.S.C. § 301(a)_____21

17 U.S.C. § 408(b)(1)_____13

17 U.S.C. § 408(b)(2)_____13

17 U.S.C. § 410(c)_____12

17 U.S.C. § 411(a)_____1,13

17 U.S.C. § 501_____1

17 U.S.C. § 501(b)_____12

17 U.S.C. §505_____15

Federal Rules of Civil Procedure 12(h)(3)_____13

Federal Rules of Civil Procedure 56(c)_____11

Federal Rules of Civil Procedure 56(e)_____11

Federal Rules of Evidence 1001-1008_____17

-vi-

**DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT
(COPYRIGHT CLAIMS)**

1

2 | State Statutes

3 | California Business and Professions Code § 17200_____1

4

5 | Secondary Authorities

6 | Early Childhood Learning and Knowledge Center Website

7 |      http://eclkc.ohs.acf.hhs.gov/hslc_____4

8 | Melville B. Nimmer and David Nimmer, Nimmer on Copyright, § 12-02 (2005)___14

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT
(COPYRIGHT CLAIMS)**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendants bring this motion for partial summary judgment on the First and Second Claims of the Complaint to narrow the issues in dispute in this case.[2] Defendants specifically request that this Court enter summary judgment for Defendants as against Nulinx's First Claim of Copyright Infringement (17 U.S.C. § 501) and its Second Claim of Contributory and/or Induced Copyright Infringement (17 U.S.C. § 501).  *See* Carroll Decl.[3] Exh. 2, Complaint ¶¶ 42-64.  In addition, as Counterclaim Plaintiffs and to preserve jurisdiction, Defendants also bring this Motion on their First Counterclaim for a declaration of invalidity of the copyright registration asserted by Nulinx as otherwise, upon consideration of the facts and law herein, the Court may properly conclude that it lacks jurisdiction over Nulinx's First and Second Claims allegedly arising from infringement of a copyright registration in a software program entitled "COPA". *See* Exh. 2, Complaint, ¶ 8.

In order to bring a copyright infringement action in this District Court, Nulinx was required to own a beneficial right to a copyrighted work[4] and to have registered the copyright in the work it alleges is infringed. *See* 17 U.S.C. §411(a).[5] Nulinx did not perfect an ownership interest in the work it registered before filing the action.  Even more egregious, however, Nulinx is not suing for infringement of the registered work (indeed it admits that work no longer exists), it is suing on derivatives thereof; substantially revised versions of the software and screenshots, for which it has not perfected an ownership interest and which derivative works are ***not registered***.  Compounding these fatally

---

[2] In a separate Motion, Defendants are also moving for partial summary judgment on Plaintiff's Third claim (California unfair competition Calif. Business & Professions Code § 17200), Fourth claim (Common Law Unfair Competition) and Fifth Claim (Accounting)..

[3] The documents and deposition transcript excerpts of the Exhibits numbered 1 - __ submitted in support of this Motion are authenticated by the Declaration of Stuart Carroll (Carroll Decl.) submitted herewith.  Deposition transcripts cites are identified in the form "Exh. __, Name Depo at page:line(s)" e.g. Exh. 4, Kelishadi Depo at 1:1-15.  Exhibits are identified solely by Exhibit number, e.g. Exh. 4.

[4] *See Silvers v. Sony Pictures Entertainment, Inc*., 402 F.3d 881, 884 (9th Cir. 2005)

[5] *See also, Kodadek v. MTV Networks, Inc*., 152 F.3d 1209, 1211 (9th Cir. 1998)

defective procedural flaws, a comparison between the later versions of the Nulinx COPA software and current screen shots (the unregistered derivative works) and the Servue software and screen shots leads to the conclusion that there could be no infringement even if the derivative works were registered.

Upon confirming that the foregoing can be established by the Defendants, the obvious question would be: Why has Nulinx initiated an expensive and distracting action in the District Court?  The answer to that question may be complex, but the history and facts suggest that there was an ill conceived and unfortunate rush to the copyright office, then to the courthouse and then to the customer base to attempt to cripple former business partner and current competitor who prevailed in a competitive bidding process for a substantial contract.  As discussed herein, two of the individually named parties, Kohan and Kelishadi, were officers of a company doing business as Apilan (formally Toolcircle.com, Inc., a Nevada Corporation), in the 2000 to 2003 time period when the subject software was initially created.  Indeed, Kelishadi as the president of Apilan marketed and sold the Child Outcome Planning & Assessment (COPA) software program to Head Start agencies as an *Apilan product*.

Apilan is obviously not a party and it did not assign its rights to Nulinx.  Instead, Kelishadi covertly moved the Child Outcome Planning & Assessment (COPA) software development to another company he controlled, Nulinx--- to that point a company that "did some consumer electronics" and "roller blades" and "later on we did some e-commerce".  Exh. 5, Nulinx Depo 18:9 12.  Throughout 2002, Kelishadi outsourced the further development of the COPA software program to a contractor, Tyson Murphy ("Murphy"), who never assigned rights to the derivative work he generated to Nulinx.  Kelishadi subsequently resigned from Apilan in 2003 to focus on Nulinx and its development of the COPA software program.

Kohan and Javaharian later founded Servue, where they developed a competing Head Start monitoring software program to that being offered by Nulinx. When Servue prevailed in a competitive bid and Nulinx' challenge was rejected, Nulinx rushed to file a

copyright registration[6] allegedly on the original program knowing a registration is required to file an action. Apparently knowing that Nulinx could not obtain assignments from everyone involved in rewriting the original program, Kelishadi elected to try and register the prototype version written by Infostreet with whom he had a personal relationship such that he anticipated he could get an assignment even though a copy of that program was not available.

These facts are important because the Complaint requests an award of attorneys' fees on the copyright infringement allegations (*see* Exh. 2, Complaint at 12 ¶(10)), yet such an award should be available to the *Defendants* upon prevailing on the infringement claims as requested herein. The Supreme Court has adopted the "evenhanded" approach to the award of attorney's fees in copyright cases. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) ("Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion."). In exercising this discretion, the Court noted that courts may be guided by the factors articulated by the Third Circuit in *Lieb v. Topstone Indus.*, 788 F.2d 151, 156 (3d Cir.1986), which include "frivolousness, motivation, objective unreasonableness ... and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n. 19, 114 S.Ct. 1023 (*quoting Lieb*). The Ninth Circuit has held that "while courts may take the *Lieb* factors into account, they are `nonexclusive.' Even so, courts may not rely on the *Lieb* factors if they are not `faithful to the purposes of the Copyright Act.' Faithfulness to the purposes of the Copyright Act is, therefore, the pivotal criterion." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996).

With respect to Nulinx' Complaint, the Copyright infringement theories are objectively unreasonable if not outright frivolous. There was never a viable infringement theory.  Further, the Complaint was filed with a malicious intent - to drive Servue from

---

[6] The Source Code Deposit submitted by Nulinx on a disc contained a 7,374 page static document that appears to include a late 2002 version of the computer source code as well as personal data, including names, addresses, medical data and social

the market.  Shortly after filing the Complaint, Nulinx threatened Servue's customer, LACOE, with an infringement suit if it used Servue's competing software.  Shortly thereafter, LACOE cancelled the contract with Servue, failing to pay the remaining $600,000 due and substantially crippling Servue as a going concern.

The Copyright Act was never intended to provide a disgruntled software vendor with a sword with which to slay a successful competitor.  Thus, upon granting this motion Servue requests that the Court find that the Defendants are the prevailing parties on the Copyright infringement claims and are thus entitled to their attorneys fees under 17 U.S.C. §505.  In the absence of such an award of attorneys' fees, despite having no viable basis for a copyright infringement action, Plaintiff would potentially succeed in its quest to eliminate Servue as a competitor.

## II. FACTUAL BACKGROUND

"Head Start" is a program of the United States Department of Health and Human Services that provides comprehensive education, health, nutrition, and parent involvement services to low-income children and their families.  *See* http://www.acf.hhs.gov/programs/ohs/about/index.html#reports;[7] *see also* Exh. 2, Complaint ¶ 12; Kohan Decl. ¶17.  Agencies seeking funds under the Head Start program are required to submit assessments meeting particular requirements which have evolved over the years as defined by the Office of Head Start (OHS).

Plaintiff **Nulinx** is a California corporation owned entirely by Hamid Kelishadi ("Kelishadi") who is Nulinx' sole officer, director and shareholder.  Exh. 5, Nulinx Depo 21:7-17; Exh. 4, Kelishadi Depo 9:16 – 10:3; 12:15-23.  Nulinx provides software to assist Head Start agencies in collecting and reporting data for use by those agencies and

---

security numbers for individuals enrolled in a Head Start program.
[7] The Head Start program provides grants to local public and private non-profit and for-profit agencies to provide comprehensive child development services to economically disadvantaged children and families, with a special focus on helping preschoolers develop the early reading and math skills they need to be successful in school. In FY 1995, the Early Head Start program was established to serve children from birth to three years of age in recognition of the mounting evidence that the earliest years matter a great deal to children's growth and development. *Id.*

1  for the OHS.  Exh. 2, Complaint ¶ 13.  Nulinx calls its software "COPA". *Id.* Complaint ¶

2  13[8]; Exh. 5, Kelishadi Depo 57:8-24.

3       Defendants **Kohan** and **Javaherian** are officers, directors and shareholders of

4  **Servue**.  Kohan Dec. ¶¶8,9. Servue provides software (the "Servue Software") to assist

5  Head Start agencies in collecting and reporting data for use by those agencies and for the

6  OHS.  *Id.* ¶18.  All Head Start and Early Head Start grantees and delegate agencies are

7  required to submit a Head Start Program Information Report for each year they are in

8  operation. *Id.*  ¶19.[9]  The Servue Software assists these grantees and agencies in

9  compiling the information required for these annual reports.  *Id.* ¶20.  True and correct

10  copies of screenshots generated from the Servue Software are attached as Exhibits A-D to

11  the Kohan Declaration.[10] *Id.* ¶21.

12       **A.     COPA Software Development**

13       In the fall of 2001, Kelishadi was the President of both Apilan, where he had an

14  office (Exh 5, Nulinx Depo. 33:2-13) and Nulinx which he operated out of his home. Exh

15  5, Nulinx Depo 33:2-5.  Apilan's offices were located in the same building as Infostreet,

16  Inc. ("Infostreet"), a third-party software developer.  Kohan  Dec. ¶ 12. Infostreet

17  provided to Apilan an estimate of $40,000 for developing a web-based program for

18  processing child information management. Kohan Decl. ¶13.  Kelishadi subsequently

19  asked Infostreet to create only a prototype version of a "web-based program for

20  processing child information management." Exh. 4, Kelishadi Depo. 59:13 – 60:10;

21  63:11-12.

22       Kelishadi called the program "Child Outcome Planning & Assessment" and later

23  shortened the name of the program to "COPA".   Exh. 4, Kelishadi Depo. 57:8 – 58:18.

24  Infostreet employee Todd Paradise ("Paradise") was primarily responsible for authoring

25  _____

26  [8] Several other companies including Cleverex, ControlTech, ChildPlus as well as Servue provide software to assist Head Start

27  agencies in collecting and reporting data for use by those agencies and for OHS in the U.S. Department of Health and Human
   Services which oversees the Head Start program.  (Kohan Dec. ¶ 24)
   [9] Additional information regarding Head Start may be found at http://eclkc.ohs.acf.hhs.gov/hslc.

28  [10] As of this filing, Servue is waiving the "Confidential—Attorney's Eyes Only" designation for the Servue Screenshots.

the prototype version (the "COPA Prototype").  Exh. 14, Paradise Depo 18:11-14; 20:10-25.  Paradise delivered the COPA Prototype to Kelishadi shortly before January 1, 2002.  Exh. 14, Paradise Depo. 22:24 – 23:13.  Nulinx admits that the "original source code was written by Infostreet."   Exh. 7, Nulinx's Responses Nos. 22, 23 and 24 to Servue's First Set of Requests for Admissions.   While the COPA Prototype was delivered shortly before January 1, 2002, Paradise testified: "[a]fter my work was completed Nulinx had multiple developers that worked on the website [COPA] and pretty much changed everything about what I have done."  Exh. 14, Paradise Depo. 34:22-25.

Acting as the president of Apilan, Kelishadi marketed and sold the Child Outcome Planning & Assessment (COPA) software program to Head Start agencies as an **Apilan** product on December 7, 2001, January 4, 2002 and February 11, 2002. *See* Exhs. 17, 18, 19; *see also* Exh. 4, Kelishadi depo. 132:20-143:7; 55:18-60:10, Kohan Decl. ¶ 15.  Kelishadi describes "COPA" as a "web-based program for processing child information management."  Exh. 4, Kelishadi Depo. 55:18-60:10.  In fact, Exh. 19, a contract between Apilan and Episcopal Children's Services, Inc., specifically states that the parties to that contract, signed by Kelishadi on behalf of Apilan, "agree that prior to entering into this contract, Apilan (the contractor) Inc. has developed a **web-based program for processing child information management**.  **Apilan has all the rights** and patents **to this** and other programs developed by the contractor." (Exh. 19, p. 3, ¶8b, Bates 1512) [emphasis added].

In April 2002, Kelishadi engaged Tyson Murphy ("Murphy"), an independent computer programmer, to develop the COPA Prototype into a functional program.  Declaration of Murphy ("Murphy Dec.") ¶¶ 7,9.  Murphy was an independent contractor.  Murphy Dec. ¶ 7.  No written agreement exists for Murphy's services. Murphy Dec. ¶ 8, Exh. 8, Plaintiff Nulinx's Responses Nos. 40 and 41 to Servue's Second Set of Requests for Admissions.

Murphy worked continuously to enhance, modify and add additional content and functionality to the COPA Prototype from April 2002 through October 2002.  Murphy

Dec. ¶¶9,14.  During that time, Murphy was the main, and often sole, person working on the program. Murphy Dec. ¶ 15.  Much of Murphy's work on the COPA program involved taking existing paper forms that he received from Orange County Head Start, Inc. and creating a digital version of the documents that could capture and report the data and information that the paper forms requested.  Murphy Dec. ¶ 11. Murphy received these forms primarily via U.S. Mail from Lisha Bundy, an employee of Orange County Head Start, Inc. Murphy Dec. ¶12.  Murphy copied all text entries verbatim from those forms.  Murphy Dec. ¶13.  Thus, while the content of the forms and data entry sheets were not original to Murphy, Murphy never assigned any rights to anything that would be his work-product to Nulinx.  Murphy Dec. ¶ 28.

Nulinx readily admits that between January 1, 2002 and 2008, Nulinx' COPA software has been continuously modified.  As its President Kelishadi testified: "There has been a lot of enhancement, continuous enhancement and modifications since 2002." Kelishadi Depo. 89:5-12.  "The COPA source code was first written in 2001 and has been continuously updated and revised since then through the present."  Exh. 9, Nulinx Response to Kohan's Interrogatories Set 3, No.11.  In total, Plaintiff admits that at least eight (8) people worked on the development of the COPA software since Paradise delivered the COPA Prototype.  *Id.*, Nos. 7,8,10.  However, Nulinx did not produce a single written assignment from any of the prospective authors of the COPA prototype, or any of the subsequent derivative COPA programs, dated prior to the filing of the Complaint.  In addition, Chien Hung Chou a.k.a. Ken Choe, identified by Nulinx as an author of the source code *Id*. Nos. 7,8,10 was an Apilan employee and a foreign national in the U.S. on an H1 visa allowing him to work only for Aplian. Kohan Decl. ¶ 14.

**B.  Form TX seeking Copyright Registration for COPA**

Based on the discovery in the case and information from the U.S. Copyright Office, on or about June 13, 2008, Nulinx submitted Form TX ("Form TX") seeking registration for work entitled "COPA", described as a "computer program, including text of screen displays" (the "Work").  *See*, Exh. 10.  Form TX states that Nulinx is the author

of the Work.  *Id.*; Kelishadi Depo. 108:7-25.  Neither Todd Paradise nor Infostreet are listed as authors of the Work.  *See* Exh. 10.  In June 2008, when Nulinx sought registration of the Work, no written agreement existed between Nulinx and Infostreet or Todd Paradise concerning any copyright to the COPA Prototype.

Form TX states that the Work was completed in 2002 and that the Work was first published on January 1, 2002.  *See* Exh. 10; *see also* Kelishadi Depo 108:7-25.  Thus, for the work to be published on January 1, 2002 it must have been completed by that date. Form TX also notes that the Work has not previously been registered and that the Work is neither a derivative work nor a compilation.  Exh. 10.

Plaintiff has not identified any other computer program other than the COPA Prototype that existed on or before January 1, 2002.  Carroll Dec. ¶ 18; See also Exh.11, Nulinx Responses Nos. 1 and 2 to Javaherian Interrogatories Set One.  Accordingly, ***the Work for which Nulinx sought registration in Form TX is the COPA Prototype written by Todd Paradise of Infostreet prior to January 1, 2002***.  However, ***no copies of that work existed as of the June 13, 2008, date Nulinx submitted the Form TX***.

### C.   Nulinx' Deposits with the U.S. Copyright Office

1.  **Source Code Deposit.**    As the two parts of its application for copyright registration, Nulinx submitted a disc containing purported source code for the COPA Prototype (the "Source Code Deposit") and 79 (seventy-nine) color 8 ½" x 11" documents purporting to be printouts of screen displays from the COPA Prototype (the "Screenshot Deposit").  On or about September 24, 2002, Nulinx created a back-up of its then current source code, log files and data files in a file-saving format known as ".tar".  Exh. 4, Kelishadi Depo 13:15-14:1; 16:9-16.  In or about June 2008, Nulinx submitted this back-up (the "Source Code Deposit") to the U.S. Copyright Office in order to comply with the mandatory deposit requirement for its application for copyright registration of the Work.  Exh. 4, Kelishadi Depo 14:2-4.  The Source Code Deposit is a 7,374 page static document representing a capture of all content from a server on which the COPA program, data and other information resided.  Murphy Dec. ¶ 20; Carroll Dec. ¶ 21.

As noted above, Tyson Murphy worked continuously to enhance, modify and add additional content and functionality to the COPA Prototype from April 2002 through October 2002.  Murphy Dec. ¶¶9,14.  Upon reviewing the Source Code Deposit, Murphy estimated that he created and/or modified at least 90% (ninety-percent) of the Source Code Deposit as compared to the COPA Prototype he was originally provided.  Murphy Dec. ¶ 22.  However, there is no assignment of rights from Murphy to Nulinx Murphy Dec. ¶28 and Nulinx admits that **no copy of the original COPA Prototype software exists**.  Exh. 4, Kelishadi Depo 90:1-17; Exh.5, Nulinx Depo 44:9-17[11].

     **2. Screenshot Deposit.**  On or about May 13, 2008, Nulinx printed screenshots from its then current COPA software for submission as mandatory deposit materials as part of its application for registration of the copyright to the Work (the "Screenshot Deposit").  Exh. 4, Kelishadi Depo. 88:21-89:25, Exh. 12.  The COPA software's source code generates screen displays.  Exh. 4, Kelishadi Depo. 90:12-17.  The Screenshot Deposit was *not* generated by the Source Code Deposit.  Exh. 4, Keishadi Depo. 89:18-25; *see also* Murphy Dec. ¶ 25.  The Screenshot Deposit was generated by the latest version of the COPA software that existed at the time the Screenshot Deposit was generated.  Exh. 4, Kelishadi Depo. 88:21 – 89:4.  The version of the COPA software that generated the Screenshot Deposit differed from the version that existed on January 1, 2002.  Exh. 4, Kelishadi Depo. 89:5-15.  Plaintiff does not have a copy of the COPA source code as it existed on January 1, 2002—the date of publication set forth in Form TX.  Exh. 4, Kelishadi Depo. 89:18 – 90:17.  ***Plaintiff does not have a copy of any screenshots that could have been generated by the COPA source code as it existed on January 1, 2002.***  Kelishadi Depo. 91:10-25; 117:8-14; 122:17-21; 168: 16-17.

     The Screenshot Deposit differs from the screenshots that could have been generated by the COPA Prototype.  Murphy Dec. ¶ 25.  The COPA Prototype did not

---

[11] Q.  Do you know what happened to the source code that existed in 2001 that was provided by InfoStreet?
A.  It was continuously modified through time.
Q.  All right.  So no version of what was written originally by InfoStreet has been retained anywhere within Nulinx?
A.  After the initial release, this has been a continuous -- continuous enhancement and modification to the program.  There

1   contain pop-up calendars.  Murphy Dec. ¶ 26.  The COPA Prototype did not have a

2   "Graphical Growth Assessment" page.  Murphy Dec. ¶ 27.  Todd Paradise estimates the

3   Screenshot Deposit differs in style and formatting from the COPA Prototype by 50%

4   (fifty percent) or 60% (sixty percent).  Exh. 14, Paradise Depo. 86:1-14.  ***Plaintiff has no***

5   ***documentary or other evidence that would allow a comparison of the Screenshot***

6   ***Deposit with the screenshots that could be generated by the COPA Prototype.***  Exh. 4,

7   Kelishadi Depo. 122:17-21.

8        **D.  LACOE Request for Proposal**

9        On May 15, 2007, the Los Angeles County Office of Education ("LACOE") issued

10  a Request for Proposal (the "LACOE RFP") seeking contractors that would provide

11  database management software and services for its Head Start Programs.  Kohan Decl. ¶

12  25).  Both Servue and Nulinx submitted responses to the LACOE RFP along with other

13  competitors including Cleverex, ControlTech and ChildPlus.  (Kohan Decl. ¶26).

14  Nulinx's bid under the LACOE RFP scored the lowest out of all submissions.  *See* Exh 6,

15  Deposition of LACOE 30(b)(6) witness ("LACOE Depo") 137:13-25.  Even if Servue

16  had not submitted a bid under the LACOE RFP, Nulinx' proposal would still have placed

17  last.  Exh. 6, LACOE Depo. 138:1-11.

18       LACOE awarded the contract under the LACOE RFP to Servue in July, 2007.

19  (Kohan Decl. ¶ 27).   Shortly thereafter, Servue was advised that Nulinx had initiated a

20  bid protest as against the award.  Kohan Decl. ¶  28.  The bid protest was ultimately

21  denied. Kohan Decl. ¶ 29.  Shortly after filing the Complaint, Nulinx threatened Servue's

22  customer, LACOE, with an infringement suit if it carried through on the contract award

23  to Servue.  Kohan Dec., ¶ 30; Exh. E.  LACOE demanded that Servue indemnify LACOE

24  for any copyright infringement claims brought by Nulinx. Kohan Dec. ¶ 31.  Within

25  weeks, LACOE cancelled the contract with Servue, failing to pay the remaining $600,000

26  due and substantially crippling Servue as a going concern. Kohan Dec. ¶ 32,33.

27

28

has not been one stop point.  *Id.*

### III.  ARGUMENT

#### A.    The Standard for Summary Judgment

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

A party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Id.* at 256-57, 106 S. Ct. 2505. If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Id.* at 250, 106 S. Ct. 2505 (1986); Fed.R.Civ.P. 56(e).

To be successful in a motion for summary judgment, defendants need not "negate the opponent's claim . . . [or] . . . produce *any* evidence showing the absence of a genuine issue of material fact." *Idema v. Dreamworks, Inc.*, 162 F.Supp. 2d 1129, 1141 (C.D. Cal. 2001) (citation omitted) (emphasis in original).  Instead, once the defendants have "'show[n]' – that is, point[ed] out to the district court – that there is an absence of evidence to support the nonmoving party's case," then, under Rule 56(e), Fed. R. Civ. P., the non-moving party must identify specific facts that show there is a genuine issue for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).   "Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.,,* 477 U.S. at 322, 106 S.Ct. at 2552. Rule 56(c) requires "the nonmoving party to go beyond the pleadings

1  and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on

2  file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.,* 477 U.S.

3  at 324, 106 S. Ct. at 2553.

4  **B.  Plaintiff cannot meet its burden under its Copyright Infringement Claims**

5  **to demonstrate *ownership* of a copyrightable work alleged to have been infringed.**

6  Copyright subsists in original works of authorship fixed in a tangible medium of

7  expression.   17 U.S.C. § 102 (a).  As such, a copyrighted work is created upon the

8  moment of fixation.  For software, that's when a program is saved on a disc or hard drive.

9  In the instant case, copyright in the COPA Prototype existed once Todd Paradise, then

10  employed by Infostreet, created and saved it.  Ownership of copyright in a work vests

11  initially in the author of the work.  17 U.S.C. § 201(a).  Since the COPA Prototype was

12  created by Infostreet employee Paradise, Infostreet was the author of the COPA

13  Prototype as a work-made-for-hire and the owner of the copyright.  17 U.S.C. § 101.

14  Infostreet remains the owner of the copyright unless and until it assigns its rights in a

15  writing signed by Infostreet or its agents.  17 U.S.C. § 204(a).  Nulinx has not produced a

16  written agreement dated prior to September 16, 2008 to show that Infostreet transferred

17  the copyright in the COPA Prototype before the action was filed.  Carroll Dec. ¶ 17.

18  Similarly, on June 13, 2008, when Plaintiff submitted Form TX to the copyright office, it

19  did not have a written assignment from Infostreet and thus it did not own the copyright to

20  the work in which it sought registration.

21  Notwithstanding, Nulinx' Form TX claims that Nulinx owns the copyright to the

22  COPA Prototype on a work-for-hire basis. *See also* Exh.2 Complaint ¶¶ 19, 20; Exh. 13.

23  A court has discretion over the evidentiary weight to be accorded the certificate of

24  copyright registration when, as here, more than five years have elapsed from the date of

25  first publication of the work until registration of the work.  17 U.S.C. § 410(c).[12]

26  

27  ───────────────────

[12] The COPA Prototype was not created on a work-for-hire basis.  Infostreet, as a corporation, and Todd Paradise, Infostreet's

28  employee, were not employees of Nulinx.  Nulinx and Infostreet did not enter into a work-for-hire agreement prior to creation
of the COPA Prototype and, moreover, software does not fall within the enumerated categories for which "work made for
hire" may apply.  *See* 17 U.S.C. § 101; *see also Community for Creative Non-Violence v. Reid*,  490 U.S. 730, 737-38, 109

In order to bring a copyright infringement claim, a plaintiff must show ownership of a registered copyrighted work. *See e.g. Kling v. Hallmark Cards*, 225 F.3d 1030 (9th Cir. 2000); *Topolos v. Caldeway*, 698 F.2d 991 (9th Cir. 1983); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529 (11th Cir. 1994); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000); *Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996). "[O]nly the owner of an exclusive right under the copyright is entitled to sue for infringement." (*Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 889 (9th Cir. 2005). Thus, the fact that Nulinx did not own the COPA Prototype when it filed the Complaint is not a triviality.

Federal courts have an independent obligation to examine their own jurisdiction, including standing, even when the parties fail to raise the issue. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31, 110 S.Ct. 596, 107 L.Ed. 2d 603 (1990). Standing is a jurisdictional issue that can be raised by a party or even the court *sua sponte* at any time during the litigation. *Delorme v. United States*, 354 F.3d 810, 815 (8th Cir. 2004) (citing Fed. R. Civ. P. 12(h)(3)). A party invoking federal jurisdiction must show that it has met the requirements of both constitutional and prudential standing. *Delorme*, 354 F.3d at 815; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992)). "The burden to show standing is not a mere pleading requirement, but rather an indispensable part of the plaintiff's case." *Id.* (internal quotations omitted).

Copyright law "is a creature of statute, and the only rights that exist under copyright law are those granted by statute." *Silvers*, 402 F.3d at 883-84). Only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." *Silvers*, 402 F.3d at 884 (citing 17 U.S.C. § 501(b)). *See also Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2nd Cir. 1982)(superseded by statute on other grounds); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2nd Cir. 1991)(*citing Eden Toys*, 697 F.2d at 32 n.3)("Copyright Act does not

permit copyright holder to choose third parties to bring suits on their behalf."); *Motta v. Samuel Weiser, Inc*., 768 F.2d 481, 484 (1st Cir. 1985)(plaintiff lacks standing unless he or she can establish a proprietary right through the chain of title to support a valid claim to the copyright); Nimmer, § 12-02 at 12-56 (only parties with ownership rights in a copyright have standing to file lawsuits for its infringement). Nulinx did not have a written assignment of the rights in the COPA Prototype, which was what it in theory registered, at the time of creation. As Nulinx's 30(b)(6) witness and President, Kelishadi testified:

> Q. Did InfoStreet have a written contract with Nulinx to do the development work to write the program?
> A. When?
> Q. In 2001.
> A. No.

Exh 5, Nulinx Depo. 42:11-15. Further, **there is no evidence of a written agreement by which Infostreet assigned rights to the COPA Prototype to Nulinx prior to the filing of the Complaint.** "The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Lujan*, 504 U.S. at 569, n.4 (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed. 2d 893 (1989)). "Plaintiff must show standing at the time he filed his complaint." *Lujan*, 504 U.S. at 569 n. 4; *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). Absent standing, a plaintiff could not rightfully invoke jurisdiction of the court. *Rapaport and Benedict, P.C. v. City of Stamford*, 39 Conn. App. 492, 496, 664 A.2d 1193, 1197 (1995). As one court found on similar circumstances: "[t]he court holds as a matter of law that plaintiff may not base his standing on an assignment that occurred two years after the lawsuit was filed." *Delacroix v. Lublin Graphics, Inc*., 993 F. Supp. 74, 83 (D. Conn. 1997).

Since Nulinx did not have a written assignment of the copyrights in the COPA Prototype created by Infostreet in 2001 either at the time of the registration or *at the time of the filing of the action*, it cannot prove that it owned the copyright in the COPA Software at the time it filed the lawsuit. As such, Nulinx did not have standing to invoke

the jurisdiction of this court under *Lujan*. Accordingly, Nulinx's Copyright Infringement based First and Second Counts should be dismissed for lack of subject matter jurisdiction. However, the Court retains jurisdiction to **invalidate the Copyright registration** asserted by Nulinx in the Complaint as a result of Counterclaim Plaintiff Servue's  First Counterclaim and its associated request for an award of attorneys' fees under 17 U.S.C. §505.  *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1386 (Fed.Cir.2002) (dismissal of a federal claim for lack of jurisdiction did not foreclose jurisdiction over the counterclaim); *Walter Kidde v. Universal Security Instruments, Inc*., 479 F.3d 1330 (Fed. Cir. 2007)(same).

    **C.  Plaintiff cannot meet its burden under its Copyright Infringement Claims to demonstrate *valid registration*, in accordance with the Copyright Act, of its copyright in the work alleged to have been infringed.**

    "[N]o action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made..." *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998) (citing 17 U.S.C. § 411(a)).  A certificate of registration is not prima facie evidence of a valid copyright if the copyright registration was not properly obtained.  *See Seiler v. Lucasfilm, LTD.*, 808 F.2d 1316 at 1321-1322 (9th Cir. 1986).  "In order to obtain a copyright registration, an applicant must deposit as a part of his application a "copy" or "copies" of the work. 17 U.S.C. § 408(b)(1) and (2). The Ninth Circuit has stated that the registration deposit requirement permits "'bona fide' copies of the original work only....' *Seiler*, 808 F.2d  at 1322. We have not expressly defined the characteristics of 'bona fide copies,' but have distinguished them from 'reconstructions.' *Id*." *Kodadek v. MTV Networks, Inc.*, *supra*, 152 F.3d at 1211.

    Nulinx does not have bona fide copies of the COPA Prototype –either screenshots or source code – that existed as of the January 1, 2002 date in the Form TX of Exh. 10. *See* Exh. 5, Nulinx Depo 153:11-12 ("I do not have an original version of 2001 and I don't have the screen shot.")  Rather, Nulinx submitted as its deposits subsequent materials created over a six-year period by numerous individuals.  Notably, the vast

majority of the Source Code Deposit was created by Tyson Murphy – an individual who was neither an employee nor an author who assigned his rights under copyright to Nulinx (Murphy Dec. ¶¶ 7,8,22,28).  Perhaps it is for this reason that Nulinx sought to register its January 1, 2002 version, the COPA Prototype, rather than any later-developed versions.

"The Copyright Act does not contemplate the copyrighting of a now non-existent original on the basis of a tendered reconstruction. Section 408 specifies the types of material that must be deposited along with an application for a certificate. *The permissible materials include bona fide copies of the original work only*; there is no mention of "reconstructions." If it were otherwise, the possibilities for fraud would be limitless."  *Kodadek,* 152 F.3d at 1212 [emphasis added].

In *Kodadek*, the plaintiff brought an infringement action against MTV Networks based upon drawings he created in 1991; however, he no longer had those 1991 drawings, or any copies thereof.  Nevertheless, the plaintiff asserted that he was so familiar with the 1991 drawings that he was able to draw virtually identical copies of them two years later from memory.  *Id.*, at 1212.  Similarly in the instant case, Kelishadi claims that "based on his knowledge" the 2008 Screenshot Deposit is substantially similar to the screenshots that might have been generated from the January 1, 2002 COPA Prototype:

> Q:  On what basis do you assert that the deposit submitted is substantially similar to the 2002 version?
> A:  Based on my knowledge.
> Q:  And your memory?
> A:  More knowledge than memory."

(Kelishadi Depo. 117:20-24).  However, as Nulinx's designated witness Kelishadi repeatedly testified that he could not identify what may have been included in screen shots from the original COPA Prototype because he didn't have them and had never compared them side by side.  Exh. 5, Nulinx Depo 151:6 – 152:10; 153:11-12 .  Contradicting the self-interested Kelishadi, the person who wrote the COPA Protype, Todd Paradise, estimates the Screenshot Deposit differs in style and formatting from the COPA Prototype by 50% (fifty percent) or 60% (sixty percent).  Exh. 14, Paradise Depo.

87:1-14. Further, the person who modified the COPA Prototype source code to the subsequently submitted 2002 version also confirmed that the Screenshot Deposit differs from the screenshots that could have been generated by the COPA Prototype. Murphy Dec. ¶ 25. For example, the COPA Prototype did not contain pop-up calendars or a "Graphical Growth Assessment" page. Murphy Dec. ¶ ¶ 26, 27. Despite these facts, *and with no documents against which to make a comparison and no instruction from Kelishadi on the issue*, (Exh. 5, Nulinx Depo 194:4-197:3) to obtain the Copyright Registration, Nulinx's counsel misleadingly represented to the U.S. Copyright Office: "[t]he 2008 version of the deposit comprises over 90 percent of the 2002 version of the work in relation to design, coordination, arrangement, display and layout." *See* Exh.15.

In *Seiler v. Lucasfilm*, the plaintiff claimed that Lucasfilm infringed on plaintiff's drawings of what became "Imperial Walkers" in the motion picture "The Empire Strikes Back." Seiler contends he created and published his drawings in 1976 and 1977. The motion picture was released in 1980 and Seiler did not obtain his copyright until 1981. Seiler was unable to produce any copies of his original drawings. *Seiler,* 808 F.2d at 1319. Applying the "Best Evidence Rule" under Fed.R.Evid. 1001-1008, the court held that Seiler could not introduce reconstructions of his drawings as evidence to support his claim for copyright infringement. *Id.*, at 1321. The Ninth Circuit stated: "[t]he dangers of fraud in this situation are clear. The rule would ensure that proof of the infringement claim consists of the works alleged to be infringed. Otherwise, 'reconstructions' which might have no resemblance to the purported original would suffice as proof for infringement of the original." *Id.*, at 1319.

It is precisely to prevent fraud that copyright law requires deposit materials to be a bona fide copy of the work seeking registration of its copyright. "Not just any kind of copy will suffice, though; only originals or "bona fide copies" are acceptable. *Id.*; *Coles v. Wonder,* 283 F.3d 798 (6th Cir.2002); *Geoscan, Inc. v. Geotrace Techs., Inc.,* 226 F.3d 387 (5th Cir.2000); *Kodadek,*152 F.3d 1209. A bona fide copy is one that is "virtually identical to the original" and was "produced by directly referring to the original."

*Kodadek,* 152 F.3d at 1211. In contrast are "reconstructions," putative copyrights that are created without reference to original works or bona fide copies. *See, e.g., Seiler,* 808 F.2d at 1320. The Copyright Act is wisely disdainful of reconstructions." *Tavory v. NTP*, 495 F. Supp. 2d 531 (E.D. Va. 2007)(*Cert. Denied* June 2009).

In *Tavory*, the court confronted facts remarkably similar to those in this matter. There, plaintiff Tavory claimed infringement in the source code to a computer program. Tavory did not have original copies of his source code.  Instead, Tavory submitted for his deposit copies modified versions of the code to the best of his recollection in order to create an original.  "[T]hese later versions had evolved from the content of the original, picking up a number of additions along the way.  The Plaintiff claims to have redacted these additions as he drafted the deposit copy of his registration, leaving only code that he had authored in 1990. Such redaction was not performed with reference to some other document, but solely from the Plaintiff's recollection. Certainly, '[o]nce a bona fide copy is made ..., subsequent copies can be made by directly referring to that copy.' *Kodadek,* 152 F.3d at 1212. But there must first be a bona fide copy from which to effect reproduction, and that is noticeably absent."  *Tavory v. NTP*, *supra*, 495 F.Supp.2d at 536.  *See also, Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486-87 (9th Cir. 2000).

"The Copyright Act does not countenance the validity of any deposit copy that was made with even the slightest reference to recollection. *Kodadek,* 152 F.3d 1209; *see also Coles,* 283 F.3d 798 (6th Cir.2002); *Seiler,* 808 F.2d 1316. To hold otherwise would yield a system fraught with fraud and deceit. *Seiler,* 808 F.2d at 1322." *Tavory*, 495 F.Supp.2d at 536.  *See also, Gallup v. Kenexa Corp.*, 2004 WL 2521183 (E.D.Pa.) ("The evidence and Gallups' own admission establish that Gallup did not deposit an accurate copy of the version of the Q12 as it existed on January 10, 1992.  The 'deposit copy submitted with the 1999 application was neither a reproduction nor a valid copy of the work Gallup sought to protect.  Accordingly, I find that Gallup's copyright registration was invalid." *Id*. at *7)( Exh. 16).

In the instant case, Plaintiff did not even go so far as to redact subsequent materials added to the original COPA Prototype, relying entirely on Kelishadi's recollection as to what existed as part of the COPA software on January 1, 2002.  For Nulinx to prevail on its claim that the Servue Source Code infringes the copyright that is the subject of the registration, Nulinx must first demonstrate, among other burdens, that the Source Code Deposit is what existed on the date set in the registration, January 1, 2002, and that the Servue Source Code, at a minimum, is substantially similar to the Source Code Deposit. *See, e.g. Warner Bros. Inc. v. ABC, Inc.*, 6i54 F.2d 204, 208 (2d Cir. 1981).  Thus, for example, in *Seiler*, the Ninth Circuit required production of *what was actually copyrighted* so that the copyrighted "works are juxtaposed with Lucas' and their contents compared." *Seiler*, 808 F.2d at 1320.  However, Plaintiff has admitted that it does not have the source code or the screen shots that existed as of January 2002. Exh. 5, Nulinx Depo. 151:6 – 152:10; 153:11-12.  ***Thus, there is no possible way Plaintiff can meet its burden to show substantial similarity to something that does not presently exist.***  When, as here, Plaintiff cannot show that the Source Code Deposit is virtually identical to the source code for the COPA Prototype *and* that the Screenshot Deposit is virtually identical to screenshots that may have been generated from the COPA Prototype, then summary judgment of non-infringement (as well as invalidity) in favor of the Defendants is appropriate because Nulinx can not prove that it has a valid registration.  *See Coles v. Wonder*, 283 F.3d 798 (6th Cir. 2002).  Accordingly, summary judgment should be granted in favor of Defendants on Nulinx' Copyright Infringement claims of the First and Second Counts.

**D.  Plaintiff can not meet its burden under its Copyright Infringement Claims to demonstrate sufficient *similarities* between the Source Code Deposit and the Servue Source Code or the Screenshot Deposit and the Servue Screen Shots.**

Initially, as a matter of law, Plaintiff cannot claim infringement of the current version of the COPA screenshots, as a derivative of the original, where the current version derivatives are unregistered.  17 U.S.C. § 411(a); *Kodadek*, 152 F.3d at 1211;

*Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp* 354 F.3d 112, 115(2nd Cir. 2003). Yet, that is ***exactly*** what Nulinx believes it can assert and pursue in this litigation even while admitting it does not even have the 2001 versions of the screenshots! Kelishadi, as Nulinx's designated witness and President, testified:

> Q.   And is the basis of Nulinx's belief that Servue infringes the copyright registration your belief that the features and functionalities of the screen shots are protected by the copyrights?
> A.   We believe -- I believe that Servue infringed on our copyright because all these screen functionalities' features are very representative of our software that comes from many years of experience, and it makes us stand out in the marketplace.  And when somebody violates that, I believe, yes, they violated our software rights.
> …
> Q.   And did you -- did Nulinx ever determine if there is any portion of Servue's code, programming code, which is asserted to be infringing upon the code that was registered?
> A.   Um, we didn't have access to Servue's code, I believe, until just recently.
> Q.   And has there been anything made -- has there been any determination of whether any of Servue's code infringes upon any code of Nulinx?
> A.   How do you define the code infringes on the other code?  Are you saying the code is similar?  Same? Creating the same function?
> Q.   I'm asking Nulinx's understanding, and one of the topics is Nulinx's infringement theories on this, whether Nulinx believes that there's any infringement of the code that was registered by the code that was produced from Servue?
> A.   Yes.  Because we believe the code produces the functionality and the screen shots and the format of the entire software.  So although a code may not be line-by-line identical, it produces an infringeable product.
> Q.   Okay.  Anything else with respect to how the code would be infringing?
> A.   I -- as I said, I have not gone through the code thoroughly.  We just received it.  I haven't had a chance to review it in detail.
> …
> Q.   Can you tell me if the very first version of the InfoStreet COPA program which was delivered in 2001 and the subject of the January 1st, 2002 registration generated a screen shot identical to the Add Family Visit?
> A.   Once again, at this point, I don't -- I have to look at that source code.  I don't know.
> Q.   You have to look at what source code?

A.   I have to look at the version -- the first old version source code to see if their source code related to a Family Visit section.  So because I don't have -- **because I don't have screen shots related to that first version release**, you asked if with certainty I can say that.  With certainty, I can't say that.

Q.   And we can't say with certainty whether the first version had the source code to generate that Add Family Visit screen shot because we don't even have the original source code provided in 2001; correct?

THE WITNESS:  I -- I personally think that's irrelevant.  They have proven attempt at accessing our software throughout the years.  And as we have added and enhanced our software, they have infringed and they have copied various elements.

Q.   So you don't think it's relevant that you don't know whether or not the version of the software that you registered and that you are suing them on even included a screen shot which would generate this Add Family Visit screen shot?

A.   I'm stating that I don't know right now if that is included in that same version or not.

Q.   And we have no way of being able to make that determination because you don't have original versions of the screen shots nor do you have an original 2001 version of the source code; correct?

A.  **I do not have an original version of 2001 and I don't have the screen shot.**  But that does not mean that we cannot -- What was the word you used?

Q.   Determine if there is a --

A.   Right.  It does not mean that we cannot determine.  There might be a way to determine.

Q.   How would you determine that?

A.   I don't know.  I have to -- that's what I guess research or experts or, you know, investigations are for.

Q.  **Are there any other screen shots besides these two we've looked at that you could look at in this entire COPA program and tell me for an absolute certainty that those were included as screen shots could be generated by the software which was registered and available for January 1st, 2002?**

A.  **Okay.  I think we've covered that many times already, that we -- to the best of my knowledge, we do not have screen shots of the end of 2001 COPA program in its entirety.  So we've gone through that many times**.

…

Q.  But you understand that the lawsuit is about the COPA software that existed on January 1st of 2002?

 A.  My understanding is the lawsuit is about infringing on our software and our work and, you know, constantly trying to spy on our software and unfair competition and lying and deceit.  That's what I think the lawsuit is about.

…

Q.  I'm asking you if there is any other reason that you -- that Nulinx believes that Servue has infringed other than what we have talked about so far.

A.  Well, we believe that Servue has infringed on our software because we see the derivative work, we see information that has, you know -- that shows that have continuously been trying to get access to our software through either spying on our software or recruiting our employees or, you know, collaboration with others to get access to our software.

Exh. 5, Nulinx Depo. 125:4-14; 137:10-138:11; 151:22 – 154:6; 234:12-18; 264:7-16 [emphasis added].

Irrespective of the inherent defect in Nulinx' infringement theory, as confirmed by Kelishadi's lay opinions, there simply is no substantial similarity between the Source Code Deposit provided for the registration and the Servue Source Code.  *See* Report of Expert David Rismann, Exhibit B to Declaration of David W. Rismann ("Rismann Dec.").  The two codes are written using different tools and programming languages. Rismann Dec. ¶ 19.  The Servue Source Code is developed using Microsoft Active Server Pages ("ASP"), the Visual Basic Scripting language ("VBS"), the Java Scripting language ("Javascript"), and HTML.  Rismann Dec. ¶ 20; Kohan Dec. ¶22.  The Source Code Deposit is written with EMBPERL, an embedded form of the Perl programming language, in combination with hypertext markup language ("HTML").  Rismann Dec. ¶ 21; Murphy Dec. ¶ 16.  The Servue Source Code is designed to run on a Windows platform.  Kohan Dec. ¶ 23.  The COPA Prototype is designed to work on a Linux-based platform.  Murphy Dec. ¶ 18.  The Servue Source Code and the Source Code Deposit do not appear to be the same, or even substantially similar.  Rismann Dec. ¶ 18.

Yet, Nulinx claims ownership of "all HTML text and text and compilation present in screen displays, and the methods, designs, logic, user interface and functionalities contained therein, in Plaintiff's Work."  Exh. 2, Complaint ¶ 20.  These copyrightable

elements, Nulinx theorizes, are present in the Screenshot Deposit generated in 2008, which Nulinx believes are infringed. *See* Nulinx Depo excerpts, *supra*. Notwithstanding Nulinx' legally deficient theory, however, much of what Nulinx claims is copyrightable subject matter simply is not copyrightable.

For example, "[f]unctions such as 'Add user,' 'Games menu' and 'Done' are not copyrightable…" *Dream Games of Arizona, Inc. v. Pc Onsite*, 561 F.3d 983, 990 (9th Cir. 2009). Items that are indispensable, or at least standard, are not protectable by copyright. *See e.g. Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 616 (7th Cir. 1982); *Apple v. Microsoft*, 35 F.3d 1435, 1444 (9th Cir. 1994). "Trivial elements of compilation and arrangement, of course, are not copyrightable because they fall below the threshold of originality." *U.S. v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978). Arrangements, coordination and selections in works which are nearly inevitable are clearly unoriginal. *See Feist v. Rural*, 499 U.S. 340, 363, 111 S.Ct. 1282 (1991).

"Whether a particular component of a program is protected by a copyright depends on whether it qualifies as an "expression" of an idea, rather than the idea itself." *Johnson Controls v. Phoenix Control*, 886 F.2d 1173, 1175 (9th Cir. 1989) (citing *Harper & Row Publishers, Inc. v. Nation Enters*, 471 U.S. 539, 547, 105 S.Ct. 2218, 2223, 85 L.Ed.2d 588 (1985); *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 207-08 (9th Cir. 1988); 17 U.S.C. Sec. 102(b)). "Where an idea and the expression 'merge,' or are 'inseparable,' the expression is not given copyright protection." *Johnson Controls*, 886 F.2d at 1175 (*citing Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971)).

In order to prevail on its copyright claims in the Screenshot Deposits, Plaintiff must demonstrate that Defendant has infringed upon copyrighted works, not mere ideas or *di minimus* features. *See MiTek v. Arce,* 89 F.3d 1548, 1560 (11th Cir. 1996). Because both COPA and the Servue Software collect, collate, manage and report information required to be gathered by Head Start agencies and submitted to the U.S. Department of Health and Human Services, similarities related to the collection and reporting of similar

data require a heightened standard in order to be deemed infringing. "When the nature of the creation makes similarity necessary," such " 'indispensable expression' of ideas may be protected only against virtually identical copying." *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1507 (9th Cir. 1987).  When the range of possible expression is narrow, only thin protection is afforded. *Apple v. Microsoft*, 35 F.3d 1435, 1446 (9th Cir. 1994). "[T]he critical factor in deciding whether to apply a virtual identity standard is whether the work is capable of only a narrow range of expression." *Apple v. Microsoft*, 821 F.Supp. 616, 625 (N.D. Cal. 1993).

The virtual identity standard is much more stringent than the substantial similarity standard. *See e.g.*, *Apple  v. Microsoft*, 35 F.3d at 1445-46. The substantial similarity test asks whether an average layperson would recognize the defendant's work as having been appropriated from the copyrighted work. *Warner Bros., Inc. v. ABC, Inc.*, 654 F.2d 204, 208 (2d Cir. 1981). When applying the virtually identical test, the question is whether there has been "bodily appropriation of expression" or "copying of substantially the entire item." *Apple Computer, Inc. v. Microsoft Corp.*, 821 F.Supp. 616, 623 (N.D. Cal. 1993), *aff'd* 35 F.3d 1435 (9th Cir. 1994).

Despite any similarities in certain sections, the Screenshot Deposit and the Servue Screenshots are different in appearance, navigation, data entry, data display, and apparent/implied functionality. Rismann Dec. ¶ 22.  While similarities would be expected due to the nature of the programs represented and the data they were designed to capture, the two sets of screen captures are far from virtually identical.  Rismann Dec. ¶ 23. Any reasonable observer, let alone an expert in computer programming, however, can readily discern the absence of a bodily appropriation by the Servue Screenshots of the Screenshot Deposit.  Compare Exh. 12 with Kohan Dec. Exhs. A-D.  Accordingly, summary judgment should be granted in favor of Defendants on both of the Copyright Infringement Claims.

Even if the lesser standard of substantial similarity is applied to a comparison between the Servue Screenshots and the Screenshot Deposit, Plaintiff cannot meet its

burden to show such similarity.  In order to show substantial similarity, Plaintiff must prove both extrinsic and intrinsic similarity. *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992). Summary judgment for Defendant is appropriate when after viewing all evidence and drawing every inference in a light most favorable to the Plaintiff, Plaintiff cannot show similarity of such elements. *Id.* at 465. "[T]he question of whether there is substantial similarity of ideas between two works may often be decided as a matter of law". *Berkic v. Chricton*, 761 F.2d 1289, 1292 (9th Cir. 1985) (quoting *Sid & Marty Krofft v. McDonald's.*, 562 F.2d at 1164). "Summary judgment is proper if reasonable minds could not differ as to the presence or absence of substantial similarity of expression." *See v. Durang*, 711 F.2d 141, 142 (9th Cir. 1983).

Plaintiff bears the burden of proving that the works are substantially similar in a copyright infringement case. *Litchfield v. Speilberg*, 736 F.2d 1352, 1356 (9th Cir. 1984). After the Defendant makes a motion for Summary Judgment rebutting Plaintiff's claims of substantial similarity, summary judgment is appropriate if Plaintiff fails to make such a showing. *See Barnes v. Arden Mayfair*, 759 F.2d 676, 680 (9th Cir. 1985).

In the instant case, the Servue Screenshots are not substantially similar to the Screenshot Deposit.  Despite any similarities in certain sections, the Screenshot Deposit and the Servue Screenshots are different in appearance, navigation, data entry, data display, and apparent/implied functionality. Rismann Dec. ¶ 22.  This court can readily make its own observation regarding the lack of substantial similarity between the two works.  As Plaintiff cannot meet its burden of proving that the Servue Screenshots are substantially similar to the Screenshot Deposit, summary judgment in favor of Defendants should be granted as to Plaintiff's copyright infringement claims.

## IV.  CONCLUSION

As no material issues of fact exist, Defendants respectfully request that this Court grant this Motion for Partial Summary Judgment on the First and Second Claim for Relief set forth in the Complaint and on the First Counterclaim for the reasons set forth above.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

LAW OFFICES OF STUART L. CARROLL

Dated:  September 13, 2009

By:   /Stuart L. Carroll/

Stuart L. Carroll

Attorneys for Defendant and Counterclaim
Plaintiff Servue Solutions, Inc., and for Defendants
Hamid Kohan and Benjamin Javaherian

**DEFENDANTS' NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT**

1

## CERTIFICATE OF SERVICE

2      I HEREBY CERTIFY that I electronically filed today the foregoing with the Clerk

3  of the Court using the CM/ECF system, which will send notification of such filing to all

4  persons registered for this case, including Plaintiff's counsel.

5

6  Dated: September 13, 2009.

7

8                                          /s/ Stuart L. Carroll

9                                          Stuart L. Carroll

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28